**RINA CARMEL (Bar No. 208311)**
  rc@amclaw.com
**DONALD W. McCORMICK (Bar No. 109584)**
  dwm@amclaw.com
**ANDERSON, McPHARLIN & CONNERS LLP**
**707 Wilshire Boulevard**
**Suite 4000**
**Los Angeles, California 90017-3623**
TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594

Attorneys for Plaintiff Mesa Underwriters Specialty Insurance Company

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, a New Jersey corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HYDS, INC., a California corporation;<br><br>WEST COAST FLOORING, INC., a Washington corporation;<br><br>and DOES 1 through 25;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Mesa Underwriters Specialty Insurance Company ("MUSIC"), for its complaint in this matter, alleges as follows against Defendants HYDS, Inc. ("HYDS"), West Coast Flooring, Inc. ("WCF"), and DOES 1 through 25 (collectively "Defendants"):

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy is between citizens of different states and the amount in controversy exceeds $75,000.

2. This court further has jurisdiction over this action pursuant to the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because MUSIC seeks a judgment declaring that it does not owe any duty to defend or indemnify HYDS in an underlying action filed by WCF against HYDS, captioned *West Coast Flooring, Inc. v. HYDS, Inc.*, King County, Washington Superior Court Case No. 19-2-10788-0 SEA ("Underlying Action"), under the commercial general liability insurance policy issued by MUSIC.

3. Venue is appropriate in this district under 28 U.S.C. §§ 1391(b)(1) and/or 1391(b)(3) because, on information and belief, the principal place of business of HYDS is located in Calabasas, California, which is located in Los Angeles County, which is located in the Western Division of the Central District of California, and WCF is located in King County, Washington.

## PARTIES

4. MUSIC is a corporation initially incorporated in the State of Oklahoma in 1979. In 2010, MUSIC changed its name from Montpelier U.S. Insurance Company to Mesa Underwriters Specialty Insurance Company and redomiciled in the State of New Jersey. MUSIC's principal place of business is in Branchville, New Jersey. MUSIC is a citizen of the State of New Jersey.

5. On information and belief, HYDS is a corporation organized under the laws of the State of California, with a principal place of business in Calabasas, California. HYDS is a citizen of the State of California.

6. On information and belief, WCF is a corporation organized under the laws of the State of Washington, with a principal place of business in King County, Washington. WCF is a citizen of the State of Washington.

## AMOUNT IN CONTROVERSY

7. As alleged in more detail below, in the Underlying Action, WCF seeks monetary judgment in the amount of at least $635,552.88 from HYDS. HYDS has requested a defense and indemnity from MUSIC for the Underlying Action, so that it claims at least $635,552.88 from MUSIC.

# THE UNDERLYING ACTION

8. The Underlying Action was filed on April 19, 2019. The Complaint for Breach of Contract and Warranty ("Underlying Complaint") filed in the Underlying Action alleges that HYDS is "in the business of importing and distributing stone and tile products for use in construction projects and training its customers on the installation of those products." Underlying Complaint ¶ 5. A true and correct copy of the Underlying Complaint is attached as Exhibit "A."

9. The Underlying Complaint contains allegations regarding two construction projects.

**Allegations Regarding The Sedona Project**

10. For the first project, the Sedona project, WCF alleges that it ordered countertops from HYDS. WCF alleges that on July 9, 2018, it provided HYDS with a $32,500 deposit for the countertops. WCF alleges that on or after July 23, 2018, WCF and HYDS entered into an agreement for the sale of acceptable countertops and tile for specified dates. WCF alleges that it relied on HYDS' promised delivery dates, but HYDS failed to timely deliver the countertops. WCF alleges that HYDS' breach of contract caused WCF to have to find the countertops from another vendor and miss production dates, causing financial loss to WCF. WCF alleges that the total financial loss to it equals $144,171, and includes the $32,500 deposit, $73,000 loss in gross profit due to losing a job due to late delivery, and $38,671 due to WCF having to buy the countertops locally. Underlying Complaint ¶¶ 6-10.

**Allegations Regarding The Southport Project**

11. For the second project, the Southport project, WCF alleges that that "HYDS delivered defective tile to WCF," that "[t]he defective tile was further weakened in transit by improper packaging and began to chip and flake when grouted," and "the defective tile did not have a proper coating and therefore collected dirt in its pores." Underlying Complaint ¶ 11.

12. WCF further alleges that "[a]s a result of the defective tile, beginning in

or about July 2018, WCF was forced to sort defective tile from non-defective tile, to wash the defective tile, and to demolish certain defective tile after WCF had installed it as demanded by WCF's contractor, Excel Pacific," and that "[t]his demolition in turn required the replacement of the tile and drywall." Underlying Complaint ¶ 11.

13. WCF further alleges that in August 2018, "HYDS represented to WCF that additional tile was being manufactured to replace the defective tile," but this was not true. WCF alleges that it "began to run out of tile for its project and was forced to find tile from a more expensive source." Underlying Complaint ¶ 12.

14. WCF alleges that HYDS' failure to deliver acceptable tile was a breach of contract, which caused WCF to incur "delay costs, overtime charges, additional labor for the sorting and cleaning of the defective tile, and additional costs for purchasing the tile from a more expensive distributor," totaling $491,381.88. Underlying Complaint ¶ 13.

**Counts and Remedies Sought**

15. The Underlying Action contains the following counts:

   a. Count One: Breach of Contract. WCF alleges that HYDS breached contracts for the Sedona and Southport projects by failing to timely provide the countertops and non-defective tiles. WCF alleges that it has been damaged by HYDS' failure to timely provide countertops and to deliver non-defective tile, in the amount of at least $144,171. Underlying Complaint ¶¶ 14-16.

   b. Count Two: Breach of Implied Warranty of Merchantability. WCF alleges that HYDS breached the implied warranty of merchantability by failing to deliver tile with sufficient packaging and tile that was not fit for the ordinary purpose for which such goods are used. WCF alleges that it has been damaged by HYDS' failure to provide adequate tile, in the amount of at least $491,381.88. Underlying Complaint ¶¶ 17-19.

   c. Count Three: Breach of Implied Warranty of Fitness for a

Particular Purpose. WCF alleges that HYDS breached its implied warranty of fitness for a particular purpose when WCF relied on HYDS to deliver, and HYDS failed to deliver, suitable tile. WCF alleges that it has been damaged by HYDS' failure to provide suitable tile in the amount of at least $491,381.88. Underlying Complaint ¶¶ 20-22.

16. As remedies, WCF seeks monetary judgment of at least $635,552.88, reasonable attorney fees, costs and expenses, post-judgment interest, and such other and further relief that the court deems appropriate under the circumstances. Underlying Complaint ¶¶ 23-26.

## THE MUSIC POLICY

17. Mesa Underwriters Specialty Insurance Company issued commercial general liability policy no. MP0004017003949 to named insured HYDS, Inc. for the policy period June 1, 2018 to June 1, 2019 ("Policy"). A true and correct copy of the Policy, with financial information redacted, is attached as Exhibit "B," and the Policy is incorporated into this Complaint as if fully set forth.

18. The Policy contains the following relevant definition:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

19. The Policy contains the following insuring agreement:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies. We will have the right and duty to defend the

insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for … "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)**    The amount we will pay for in damages is limited as described in Section **III** – Limits of Insurance; and

    **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage[ ] … **B** …

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage[ ] … **B.**

    **b.**    This insurance applies to … "property damage" only if:

        **(1)**    The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The … "property damage" occurs during the policy period; ...

\* \* \*

20. The Policy contains the following exclusions to Coverage A – Bodily Injury and Property Damage Liability:

    **2.**    **Exclusions**

This insurance does not apply to:

    **a.**    **Expected Or Intended Injury**

… "property damage" expected or intended from the standpoint of the insured. …

b. **Contractual Liability**

… "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contractor or agreement.  This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; …

\* \* \*

j. **Damage To Property**

"Property damage" to:

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-

completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

21. The Policy contains the following definitions:

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b**. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general

harmful conditions.

16. "Products-completed operations hazard":

   a. Includes all … "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

                                   * * *

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**21.**    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

      **a.**    Means:

          **(1)**    Work or operations performed by you or on your behalf; and

          **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

      **b.**    Includes:

          **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

          **(2)**    The providing of or failure to provide warnings or instructions.

## HYDS' REQUEST FOR COVERAGE; MUSIC'S COVERAGE POSITION

22.    HYDS has requested defense and indemnity coverage from MUSIC for the Underlying Action.

23.    On July 1, 2019, MUSIC disclaimed defense and indemnity coverage for the Underlying Action. MUSIC advised HYDS that there is no defense or indemnity coverage for the Underlying Action because, among other things, the Underlying Action does not allege "property damage," the Underlying Action does not allege an "occurrence," and Exclusions a., b., j.(5), j.(6), k., l., and m. bar or may bar coverage. A true and correct copy of MUSIC's July 1, 2019 letter to HYDS is attached as Exhibit "C."

## FIRST CAUSE OF ACTION
## (DECLARATORY RELIEF – NO DUTY TO DEFEND THE UNDERLYING ACTION)

24.    MUSIC re-alleges the allegations of paragraphs 1 through 23 of this Complaint as though fully set forth and incorporates them by reference.

25. An actual controversy has arisen and now exists between MUSIC (on the one hand) and HYDS and WCF (on the other hand), in that MUSIC contends, and, on information and belief, HYDS and WCF deny, that there is no potential for coverage for the Underlying Action under the Policy, and therefore MUSIC does not have any duty to defend HYDS as to the Underlying Action. MUSIC seeks, and is entitled to obtain, an order pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 that there is no potential coverage for the Underlying Action under the Policy, and therefore MUSIC is not now, and has never been, obligated to defend HYDS as to the Underlying Action.

## SECOND CAUSE OF ACTION

## (DECLARATORY RELIEF – NO DUTY TO INDEMNIFY AS TO THE UNDERLYING ACTION)

26. MUSIC re-alleges the allegations of paragraphs 1 through 25 of this Complaint as though fully set forth and incorporates them by reference.

27. An actual controversy has arisen and now exists between MUSIC (on the one hand) and HYDS and WCF (on the other hand), in that MUSIC contends, and, on information and belief, HYDS and WCF deny, that there is no coverage for the Underlying Action under the Policy, and therefore MUSIC does not have any duty to indemnify HYDS as to the Underlying Action. MUSIC seeks, and is entitled to obtain, an order pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 that there is no coverage for the Underlying Action under the Policy, and therefore MUSIC is not now, and has never been, obligated to indemnify HYDS as to the Underlying Action.

WHEREFORE, MUSIC prays the Court for judgment against HYDS and WCF as follows:

1. Pursuant to the first count for Declaratory Relief – No Duty to Defend the Underlying Action, for an order pursuant to 28 U.S.C. Sections 2201 and 2202 and Federal Rule of Civil Procedure 57 that defense

|   |   |
|---|---|
| 1 | coverage is not available for the Underlying Action. |
| 2 | 2. Pursuant to the second count for Declaratory Relief – No Duty to Indemnify as to the Underlying Action, for an order pursuant to 28 U.S.C. Sections 2201 and 2202 and Federal Rule of Civil Procedure 57 that indemnity coverage is not available for the Underlying Action. |
| 6 | 3. For MUSIC's costs of suit incurred herein; and |
| 7 | 4. For such other and further relief as the Court may deem just and proper. |

DATED: July 3, 2019       ANDERSON, McPHARLIN & CONNERS LLP

By: /s/ Rina Carmel

Rina Carmel
Donald W. McCormick
Attorneys for Plaintiff MESA
UNDERWRITERS SPECIALTY INSURANCE
COMPANY

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
707 WILSHIRE BOULEVARD, SUITE 4000
LOS ANGELES, CALIFORNIA 90017-3623
TEL (213) 688-0080 • FAX (213) 622-7594

2030151.1 06196-001